# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**BRYAN ANTHONY REO**
P.O. Box 5100
Mentor, OH 44061

        Plaintiff,

    v.

**MARTIN LINDSTEDT**
338 Rabbit Track Road
Granby, MO 64844

        Defendant.

Case No: 1:21-cv-1809

Hon.

---

**REO LAW, LLC**
Bryan Anthony Reo (#0097470)
P.O. Box 5100
Mentor, OH 44061
(T):  (216) 505-0811
(E):  reo@reolaw.org
*Pro se Plaintiff and Attorney*

---

## PLAINTIFF'S COMPLAINT
## (JURY DEMAND ENDORSED HEREON)

---

    BRYAN ANTHONY REO (Plaintiff), *pro se*, alleges the following against MARTIN LINDSTEDT (Defendant):

## I. INTRODUCTION

1. Plaintiff sues Defendant in the instant civil action for tortious conduct related to Defendant's campaign of cyber harassment and defamation per se against Plaintiff via the World Wide Web.

## II. PARTIES

2.  Plaintiff is an adult natural person who resides in Mentor, Lake County, Ohio. For purposes of Plaintiff's causes of action against Defendant, Plaintiff is a non-public figure.

3.  Defendant is an adult natural person of the State of Missouri who resides at 338 Rabbit Track Road, Granby, MO 64844.

### III.  JURISDICTION AND VENUE

4.  This Court enjoys subject matter jurisdiction over the instant civil action under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000.00 and the dispute is between citizens of different States.

5.  This Court enjoys personal jurisdiction over Defendant because Defendant caused tortious injury to Plaintiff in the State of Ohio by an act outside of the State of Ohio that was committed by Defendant with the purpose of injuring Plaintiff when Defendant might reasonably have expected that Plaintiff would be injured in the State of Ohio.  R.C. § 2307.382(A)(6); Civ.R. 4.3(A)(9); *Kauffman Racing Equip., L.L.C., v. Roberts,* 126 Ohio St.3d 81, (Ohio 2010) (holding that a non-commercial website intentionally used to defame an Ohio resident provides Ohio courts personal jurisdiction over foreign tortfeasor). Defendant has also regularly come to Lake County Ohio for purposes of further harassing and defaming Plaintiff [including defaming him at the Lake County Bar Association in Painesville], and Defendant was at one time subjected to a civil protection stalking order issued by the Court of Common Pleas in Lake County Ohio restraining Defendant from contacting Plaintiff.

6.  Venue is proper with this Court via 28 U.S.C. 1391(b)(2) because Plaintiff resides within the boundaries of the judicial district of the Northern District of Ohio, specifically in Lake County, State of Ohio, and the Court's personal jurisdiction over Defendant exists via Ohio Civ.R. 4.3.  Civ.R. 3(B)(7).

## IV. STATEMENT OF FACTS

7. Defendant has a long history of libeling Plaintiff. Defendant lost a jury trial ("Lake County Trial") in the Lake County Common Pleas cases [consolidated for trial] of 16CV000825 and 15CV001590 with a jury verdict being rendered in Plaintiff's favor on claims of defamation per se and false light on 6/26/2019 for libel that occurred throughout 2015 and 2016. The jury awarded Plaintiff $105,000.00 against Defendant Martin Lindstedt. Among the statements found to be defamatory or false light were statements that Defendant made about Plaintiff's employment with the Perry Nuclear Power Plant ("PNPP") and how, why, and under what circumstances Plaintiff's employment at PNPP came to an end.

8. Specifically, Defendant's statements about the Plaintiff and PNPP were that Plaintiff was sabotaging plant equipment, staging accidents, causing incidents, and was determined to be an internal security risk due to what Defendant stated was Plaintiff's alleged attempt to sabotage the reactor core of PNPP and cause a melt-down incident.

9. Defendant admitted at the Lake County Trial that he had no evidence to support the truth of any of his statements, that he never worked at PNPP, that he never spoke to anybody who worked at PNPP, and that he had absolutely no firsthand nor direct knowledge as to how or why Plaintiff's employment came to an end or under what circumstances it came to an end.

10. Defendant further stated at the Lake County Trial that he made the statements about Plaintiff and PNPP because Defendant found it amusing to make the statements and because Defendant believed he had a First Amendment right to be able to say anything he wanted about anybody he wanted under any circumstances he wanted.

11. Defendant ultimately admitted at the Lake County Trial that he did not even know if Plaintiff had quit his employment at PNPP or been fired by PNPP or under what circumstances Plaintiff's employment came to an end.

12. Verdict was rendered in favor of Plaintiff at the Lake County Trial on June 26, 2019 with the trier of fact [a duly and properly empaneled jury] finding that Martin Lindstedt, defendant in that action and this instant action, committed the torts of defamation per se and invasion of privacy false light with, among other statements, those Defendant Lindstedt made about Plaintiff and the Perry Nuclear Power Plant.

13. On September 28, 2020 Defendant published on the worldwide web an MP3 recording [which he purported to have created earlier that same day, 9/28/2020] wherein he made statements about Plaintiff and PNPP, the substance of which were substantially similar and at times almost identical to statements already deemed defamatory and false light. Specifically, Defendant claimed that Plaintiff was "fired from the North Perry Nuclear Power Plant as a security risk who caused accidents and staged incidents to sabotage the plant."

14. Allegations that an individual was a security risk who sabotaged nuclear power plant equipment within a nuclear power plant would be allegations of criminal conduct. See Title 42 U.S.C. § 2284 Sabotage of nuclear facilities or fuel which provides that, "Any person who knowingly causes an interruption of normal operation of any such facility through the unauthorized use of or tampering with the machinery, components, or controls of any such facility, or attempts or conspires to do such an act, shall be fined not more than $10,000 or imprisoned for not more than 20 years, or both, and, if death results to any person, shall be imprisoned for any term of years or for life."

4

15. An allegation that one sabotaged a nuclear power plant would cause one to be viewed in an extremely bad light in any community.

16. The doctrine of collateral estoppel [issue preclusion] operates to preclude the Defendant from being able to relitigate the issue of whether or not the statement(s) already deemed defamatory and false light are indeed defamatory and false light. The underlying issue of substantive defamation as to those statements was already litigated and they were determined to be defamatory and false light via a jury verdict in favor of Plaintiff in June of 2019. Defendant published them again in a slightly modified, but substantially similar, format, in September of 2020. The statements are still defamatory and still false light, because they relate to past events from 2012 and thus the falsity of the statement necessarily has not changed, the statements are still just as false in 2021 as they were in 2019.

17. Defendant has caused injury to Plaintiff in excess of five-hundred thousand dollars ($750,000.00).

## V.  TRIAL BY JURY DEMANDED

18. Plaintiff respectfully demands a trial by jury on all of the issues set forth herein that are triable by right.  Civ.R. 38.

## VI.  CAUSES OF ACTION

### COUNT I
### COMMON LAW DEFAMATION

19. The foregoing paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

20. Defendant published false and defamatory statements about Plaintiff to third-parties via the medium of the World Wide Web.

21. Defendant's false and defamatory statements about Plaintiff were made by Defendant without privilege.

22. Defendant acted with at least negligence in making false and defamatory statements about Plaintiff.

23. Defendant failed to act reasonably in attempting to discovery the truth or falsity or defamatory character of Defendant's publication about Plaintiff. Indeed, Defendant had actual knowledge that the statements were false because Defendant not only lost on the merits at the Lake County Trial, Defendant admitted that he had neither a factual nor evidentiary basis to support the alleged veracity of those statements and he relied solely on the legally deficient defense that the First Amendment protects defamatory speech.

24. Defendant's false and defamatory statements about Plaintiff are defamatory per se insofar as said statements reflect upon the character of Plaintiff by bringing him into ridicule, hatred, or contempt, and affects Plaintiff injuriously in his future trade or profession.

25. Defendant's false and defamatory statements about Plaintiff are defamatory per se to the extent that most of the statements in question are allegations or accusations of criminal conduct in violation of various sections in the Ohio Revised Code and the United States Code. Other allegations are defamatory per se to the extent that they accuse the Plaintiff of conduct that is morally reprehensible or would cause him to be viewed in an objectionable manner by his community.

26. Defendant committed against Plaintiff the common law tort of libel per se.

## COUNT II
## COMMON LAW INVASION OF PRIVACY – FALSE LIGHT

27. The foregoing paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

6

28. Defendant made false and derogatory statements about Plaintiff that Defendant publicized via the medium of the World Wide Web.

29. The false and derogatory statements made by Defendant about Plaintiff placed Plaintiff before the public in a false light.

30. The false and derogatory statements made by Defendant about Plaintiff are highly offensive to a reasonable person.

31. Defendant is at fault and knew or acted with recklessness as to the truth of the statements made by Defendant that concern Plaintiff.

32. As a direct and proximate result of Defendant's statements about Plaintiff, Plaintiff has been and will continue to suffer damages in the form of mental anguish and reputational injury.

33. Defendant committed against Plaintiff the tort of invasion of privacy – false light.

### COUNT III
### COMMON LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

34. The foregoing paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

35. By and through publishing false statements of fact about Plaintiff to third-parties via the medium of the World Wide Web, Lindstedt engaged in extreme and outrageous conduct.

36. Lindstedt acted with an intentional or reckless *scienter* when Lindstedt published false statements of fact about Plaintiff.

37. Due directly and proximately to Lindstedt publishing false statements of fact about Plaintiff, Plaintiff has suffered severe emotional distress in the form of vexation, irritation, anxiety, frustration, and hatred.

38. Lindstedt is liable to Plaintiff for common law intentional infliction of emotional distress.

### COUNT IV

7

## PERMANENT INJUNCTION

39. The foregoing paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

40. Some or all of the improper and unlawful conduct of Defendant is continuing and will continue in the future absent injunctive relief from the Court, and Plaintiff will continue to be damaged by the same.

41. In the absence of the entry of a permanent injunction by the Court, Plaintiff will suffer serious and irreparable harm and injury, including but not limited to damage to Plaintiff's reputation.

42. The entry of a permanent injunction will not unduly harm or burden Defendant because Defendant is required as a matter of law to refrain from tortiously harming Plaintiff's reputation via the World Wide Web.

43. Public policy favors the entry of a permanent injunction because such relief will prevent unlawful conduct and will preserve and protect Plaintiff's reputation from further injury.

44. Plaintiff has no adequate remedy available at law unless he is expected to continue to file civil actions against Defendant each and every time Defendant further defames Plaintiff.

45. Plaintiff is entitled to a permanent injunction in which Defendant is compelled to remove from the World Wide Web and not republish thereto any and all derogatory materials Defendant or Defendant's agents published there about Plaintiff.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court will enter judgment against Defendant Martin Lindstedt in Plaintiff's favor in an amount of money that exceeds five hundred thousand dollars ($500,000.00) for general, compensatory, and special damages, award Plaintiff non-

economic damages against Defendant in an amount the Court deems just and proper (Plaintiff seeks $250,000.00 in non-economic damages) [for an aggregate award of $750,000.00 dollars], award Plaintiff all costs associated with maintaining the instant civil action, award Plaintiff all pretrial and post-trial interest on any and all monetary relief awarded to Plaintiff, award Plaintiff injunctive relief by ordering Defendant to remove from the World Wide Web and not republish thereto derogatory or invasive materials about Plaintiff that Defendant or Defendant's agents published about Plaintiff, and will award Plaintiff all other relief to which Plaintiff is entitled as a matter of law or equity.

Respectfully submitted,

/s/ BRYAN ANTHONY REO
Bryan Anthony Reo
P.O. Box 5100
Mentor, OH 44061
(P):  (440) 313-5893
(E):  Reo@ReoLaw.org
*Pro se Plaintiff*

## JURY DEMAND ENDORSED HEREON

Plaintiff respectfully demands a trial by jury on all of the issues set forth herein that are triable by right.  Civ.R. 38.