UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRYAN ANTHONY REO, | ) | CASE NO.  1:21-cv-01809 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| MARTIN LINDSTEDT, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

Before the Court is Plaintiff Bryan Anthony Reo's ("Reo") request for damages relating

to the default judgment obtained against Defendant Martin Lindstedt ("Lindstedt") for failure to

comply with Court Orders.  (Doc. 41.)  For the reasons stated herein, default judgment is entered

against Lindstedt, and his counterclaims are dismissed with prejudice for failure to prosecute.

Judgment is entered in favor of Reo on his defamation and invasion of privacy (false light)

claims.  Reo is hereby awarded $100 in nominal damages on his defamation claim.

I.     **BACKGROUND**

This case is one of many in a long-standing dispute between Reo and Lindstedt.  In each

case, Reo alleges Lindstedt defamed him.

A.     **Prior State Court Actions**

On September 18, 2015, Reo sued Lindstedt in the Lake County Court of Common Pleas

("Lake County Court"), alleging common law defamation and invasion of privacy (false light,

public disclosure of private facts, and invasion of seclusion), for multiple statements made

online.  *See Reo v. Lindstedt*, Lake C.P. Case No. 15CV001590 ("State Case 1").[1]  In State Case 1, Reo alleged Lindstedt "began a relentless campaign of harassment" where he: (1) posted his identity and photographs on multiple pornographic websites; (2) impersonated him on the internet "to purport to third-parties that Plaintiff supports child molestation"; (3) published statements claiming Reo is a "homosexual, a drug dealer, a con-man, a murderer, a pawn store owner, a 'Jewish pimp,'" and other allegations.  (Case No. 15CV001590, 9/18/2015 Entry at ¶¶ 8-9.)  Reo further alleged Lindstedt "published defamatory remarks, in print format, online, declaring that Plaintiff had committed perjury, wire fraud, and mail fraud, and was engaged in fraudulent conduct in a then ongoing court proceeding."  (*Id.* at ¶ 13.)  Reo sought compensatory and punitive damages, and a permanent injunction.  (*Id.* at ¶¶ 43-54.)

On March 22, 2016, with State Case 1 still pending, Reo filed a separate action in the Mentor Municipal Court, this time naming as defendants Lindstedt, Roxie Fausnaught, and the Church of Jesus Christ Christian Aryan Nations of Missouri.  (*See Reo v. Church of Jesus Christ Christian Aryan Nations, et al.*, Mentor Muni. Ct. Case No. CVE1600245 ("State Case 2").)  Reo alleged defendants made additional false statements.  (*Id.*)  He brought claims of common law libel, invasion of privacy (false light), intentional infliction of emotional distress, statutory criminal liability (under Ohio R.C. §§ 2923.03(A)(1) and 2903(A), among others), and civil conspiracy.  On May 12, 2016, the Mentor Municipal Court transferred State Case 2 to the Lake County Court.  (*Id.*)  On May 13, 2016, the Lake County Court created a separate docket for this

---

[1] The Court is permitted to take judicial notice of public records whose contents prove facts whose accuracy cannot be reasonably questioned.  *See Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005).

case and held "[w]hether it ultimately should be consolidated with [State Case 1] will await further motion and order of this court."  (*See* Case No. 16CV000825, 6/3/2016 Entry.)

In State Case 2, Reo alleged Lindstedt and others published additional online statements, including that Reo committed perjury, is a "catamite," performed sex acts with a separate attorney, and that "Bryan Reo must die."  (Case No. 16CV000825, 5/13/2016 Entry at ¶¶ 13, 15, 18, 24.)  Reo claimed intentional infliction of emotional distress because defendants "publish[ed] false statements of fact about Plaintiff to third-parties via the medium of the World Wide Web," which resulted in distress "in the form of vexation, irritation, anxiety, frustration, and hatred."  (*Id.* at ¶ 46.)  For these claims, Reo sought damages, including punitive damages.  (*Id.* at p. 40.)

On April 21, 2017, State Case 1 and State Case 2 were consolidated (collectively "Lake County Cases").  (*See* Case No. 15CV001950, 4/21/2017 Entry.)  The consolidated cases went to trial.  At trial, a jury found Lindstedt liable on defamation *per se* and awarded Reo $40,000 in compensatory damages and $50,000 in punitive damages.  (*Id.* at 7/01/2019 Entry, p. 1(1).)  Lindstedt was also found liable on invasion of privacy (false light) and Reo was awarded an additional $15,000 in damages.  (*Id.* at 1(2).)  Reo's request for a permanent injunction was denied because "Reo failed to show that the injunction is necessary to prevent irreparable harm and that he does not have an adequate remedy at law."  (*Id.*)  Prior to sending the case to the jury, the court granted a directed verdict and dismissed Reo's claim for intentional infliction of emotional distress because "there was no evidence beyond Plaintiff Reo's own testimony that he had experienced emotional distress due to Defendant Lindstedt's actions."  (Case No. 15CV000850, 7/01/2019 Entry at p.1.)

### B.      Consolidated Defamation Cases in the Northern District of Ohio

In 2019, Reo brought four separate federal actions against Lindstedt.[2]  In each, Reo

alleged Lindstedt committed defamation.  The statements included that Reo committed various

criminal conduct, engaged in homosexual acts, and had extramarital affairs, among other things.

On March 29, 2023, the cases were consolidated in Case No. 19-cv-2103.  (*See* Case No. 19-cv-

2103, Doc. 88 (Order consolidating cases).)  On November 8, 2025, the jury found Lindstedt

liable for defamation and invasion of privacy (false light) and awarded Reo $870,000 in

damages.[3]  (*Id.*, Docs. 229, 230.)

### C.      The Instant Case

On September 23, 2021, Reo brought this case against Lindstedt, alleging defamation

(Count One), invasion of privacy (false light) (Count Two), and intentional infliction of

emotional distress (Count Three).  (Doc. 1 at ¶¶ 19-38.)  Like his intentional infliction of

emotional distress claim in State Case 2, Reo alleged distress "through publishing false

statements of fact about Plaintiff to third-parties via the medium of the World Wide Web"

resulting in "severe emotional distress in the form of vexation, irritation, anxiety, frustration, and

hatred." (*Id.* at ¶¶ 35-37.)  The core of the Complaint is that, on September 28, 2020, Lindstedt

published an online MP3 recording repeating pre-state court litigation statements claiming Reo

---

[2] *See* Case Nos. 19-cv-2103, 19-cv-2589, 19-cv-2615, and 19-cv-2786.  Each matter was initially filed in state court but removed to this District.

[3] The jury originally awarded Reo $520,000 in damages for both defamation and invasion of privacy (false light), in addition to punitive damages of $730,000.  (*See* Case No. 19-cv-2103, Doc. 229 at 2286.)  Because Reo's defamation and invasion of privacy (false light) claims relied on the same set of statements, and the jury found for Reo on both counts, only the larger of the two awards was granted.  (*Id.*, Doc. 230 at 2303.)  Ohio's statutory cap on punitive damages also reduced Reo's punitive damages to $350,000.  (*Id.*)

sabotaged plant equipment, staged accidents, caused incidents, and was ultimately considered an internal security risk.  (*Id.* at ¶¶ 8, 13.)

In this Complaint, Reo claimed Lindstedt was questioned in the Lake County Cases about these statements and that no evidence supported the truth of the statements.  (*Id.* at ¶¶ 7-12.)  In rendering its verdict, the jury in the Lake County Cases allegedly found these statements defamatory.  (*Id.* at ¶ 12.)

Importantly, neither the complaint in State Case 1 nor the complaint in State Case 2 allege facts about PNPP.  Reo attempted to amend his complaint to include PNPP allegations in State Case 1, but the Court denied his request.  (*See* Case No. 15CV001950, 9/04/2018 Entry at ¶ 40; *id.* at 12/17/2018 Entry.)  So, while the Lake County Cases resulted in a finding of liability and damages, there is nothing to suggest the jury's verdict included any finding of liability resulting from PNPP-related statements.  The other federal consolidated cases are similarly devoid of allegations related to PNPP.

**D.      Show Cause Hearing and Default Judgment**

On February 28, 2025, the Court scheduled a telephonic status conference for April 15, 2025.  (February 28, 2025, Non-Document Notice.)  A copy of the notice was mailed to Lindstedt.  (February 28, 2025, Notice of Mailing.)  The Court used the same address it used on other occasions to successfully communicate with Lindstedt.  (September 8, 2022, Notice of Mailing; December 20, 2022, Notice of Mailing.)  Lindstedt failed to attend the status conference.  (Doc. 39 at 316.)

On April 15, 2025, the Court scheduled a show cause hearing to address Lindstedt's absence.  (Doc. 39.)  Notice was sent via certified mail to the same address and emailed to pastorlindstedt@gmail.com, Lindstedt's known email address.  (April 16, 2025, Notice of

Mailing.)  The April 16, 2025 Show Cause Order stated that failure to attend "will result in sanctions, including an entry of default judgment on Plaintiff's claims and dismissal with prejudice of Defendant's counterclaims for failure to prosecute."  (Doc. 39 at 317.)

The show cause hearing was held on April 29, 2025.  Lindstedt did not appear.  (April 29, 2025, Minute Order.)  Pursuant to Fed. R. Civ. P. 16 and 37, default judgment was entered in favor of Reo for his defamation, invasion of privacy (false light), and intentional infliction of emotional distress claims.  (*Id.*)  Any alleged counterclaims by Lindstedt were also dismissed. (*Id.*)  Reo was given until May 20, 2025, to submit a brief for damages.  (*Id.*)

On May 11, 2025, Reo timely submitted his Brief Regarding Damages ("Brief").  (Doc. 41.)  Reo seeks $250,000 in general damages and $250,000 in punitive damages for defamatory statements made by Lindstedt relating to his employment at the PNPP.  (*Id.* at 326.)  In support, Reo attached his own declaration and those from several others.  Lindstedt did not oppose Reo's damages request.

## II.     LAW AND ANALYSIS

### A.     Default Judgment Pursuant to Rule 16 and 37

District courts have authority to address violations of governing rules and court orders. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976) (per curiam).  Rule 16(f) authorizes courts to issue "just orders," including the sanctions listed in Rule 37(b), for failure to follow a scheduling or other pretrial order.  FED. R. CIV. P. 16(f)(1)(C).  These sanctions include "rendering a default judgment."  FED. R. CIV. P. 37(b)(2)(A)(vi).

The Sixth Circuit "ha[s] established several legal principles that guide a discretionary decision to grant a default judgment . . . under Rule 37."  *Prime Rate Premium Fin. Corp., Inc. v.*

*Larson*, 930 F.3d 759, 768-69 (6th Cir. 2019).  Courts consider four factors in this analysis: "(1) whether the disobedient party acted in willful bad faith; (2) whether the opposing party suffered prejudice; (3) whether the court warned the disobedient party that failure to cooperate could result in a default judgment; and (4) whether less drastic sanctions were imposed or considered." *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 376 (6th Cir. 2008) (citing *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990)).  Bad faith is generally the most important factor.  *Prime Rate Premium Fin. Corp.*, 930 F.3d at 769.  The non-compliant party "has the burden of showing that his failure to comply was due to inability, not willfulness or bad faith."  *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002).

Bad faith.  "For a plaintiff's actions to be motivated by bad faith, willfulness, or fault, his conduct 'must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of [his] conduct on those proceedings.'"  *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005) (quoting *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 591 (6th Cir. 2001)). Lindstedt has failed to comply with the Court's Orders or participate in the case.  (*See* Doc. 39.) Given an opportunity to contest Reo's assessment of damages, Lindstedt failed to do so.  Failure to comply with a court order is construed as bad faith.  *Prime Rate Premium Fin. Corp.*, 930 F.3d at 769; *KCI USA, Inc. v. Healthcare Essentials, Inc.*, 801 F. App'x 928, 935 (6th Cir. 2020) (determining failure to comply with court orders without justification is "willful bad faith"). Lindstedt twice failed to appear as ordered by the Court.  This factor weighs in favor of imposing sanctions.

Prejudice.  "[R]epeatedly ignor[ing] court orders without excuse" prejudices Reo.  *Prime Rate Premium Fin. Corp.*, 930 F.3d at 769.  Failure to participate is also prejudicial.  *Stamtec, Inc. v. Anson*, 195 F. App'x 473, 481 (6th Cir. 2006) (failure to participate in discovery deemed

prejudicial to plaintiff). Prejudice results when a defendant's actions hinder the ability of a plaintiff to resolve their claims. *Mid-Am. Apartment Communities, Inc. v. Philipson*, No. 24-6082, 2025 WL 1780456, 2025 U.S. App. LEXIS 14251, at *4 (6th Cir. June 9, 2025). Lindstedt has repeatedly failed to participate. His non-appearances have prevented Reo from reaching a resolution of his claims. This factor weighs in favor of imposing sanctions.

Notice. Default judgment is appropriate where "[t]he district court warned . . . that it was contemplating a default judgment." *Prime Rate Premium Fin. Corp.*, 930 F.3d at 769; *KCI USA*, 801 F. App'x at 934 ("[T]he court warned the disobedient party that failure to cooperate could result in default judgment."). So too is dismissal of any claims or counterclaims. *Bowles v. City of Cleveland*, 129 F. App'x 239, 243-44 (6th Cir. 2005). Lindstedt was given written notice that failure to comply with the Court's orders would result in sanctions "including an entry of default judgment on Plaintiff's claims and dismissal with prejudice of Defendant's counterclaims for failure to prosecute." (Doc. 39 at 317.) This notice was sent through mail and to an email address the Court had previously used to communicate with Lindstedt. (*See* April 16, 2025, Docket Entry.) Lindstedt then failed to appear at the Show Cause Hearing. (April 29, 2025, Minute Order.) This factor favors default judgment and dismissal of Lindstedt's counterclaims.

Less drastic sanctions. Courts generally impose less drastic sanctions than default judgment or dismissal of counterclaims if a party has not abandoned a case or is willing to "proceed forward to the merits." *Focuspoint Int'l, Inc. v. Baldeo*, No. 1:20-CV-2019, 2023 WL 2241310, 2023 U.S. Dist. LEXIS 33706, at *18 (N.D. Ohio Feb. 6, 2023). Given Lindstedt has ceased participating in the case, and there is no indication he intends to proceed on the merits, there are no other options available to the Court. *See Bowles*, 129 F. App'x at 244 (collecting

cases where dismissal was warranted as sanction for failure to appear and comply with deadlines).  This factor weighs in favor of imposing sanctions.

In sum, "while courts reserve default judgments for 'the most extreme cases,'" this is such a case.  *Prime Rate Premium Fin. Corp.*, 930 F.3d at 770 (quoting *United Coin Meter Co. v. Seaboard Coastline RR.*, 705 F.2d 839, 845 (6th Cir. 1983)).  Dismissal of Lindstedt's counterclaims is also warranted.  *Bowles*, 129 F. App'x at 244.

### B.       Default Judgment

"It is well established that courts have inherent power to dismiss and/or enter a default when a party disobeys a court order or otherwise interferes with the efficient administration of justice."  *Smith v. Comm'r*, 926 F.2d 1470, 1475 (6th Cir. 1991).  Having found default judgment appropriate, all "well-pleaded allegations relating to liability are taken as true."  *Monea v. Zimmerman (In re: Family Resorts of America, Inc.)*, 972 F.2d 347, 1992 WL 174539, 1992 U.S. App. LEXIS 18400, at *11 (6th Cir. July 24, 1992).  However, the Court must still "determine whether the facts alleged in the Complaint are sufficient to state a claim for relief as to each cause of action for which the plaintiff seeks default judgment."  *J & J Sports Prods., Inc. v. Rodriguez*, No. 1:08-CV-1350, 2008 WL 5083149, 2008 U.S. Dist. LEXIS 96499, at *3 (N.D. Ohio Nov. 25, 2008); *Zinganything, LLC v. Imp. Store*, 158 F. Supp. 3d 668, 672 (N.D. Ohio 2016).

### C.       Liability

#### 1.       Count One: Common Law Defamation

In Ohio, the elements for defamation are: "(1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the

requisite degree of fault in publishing the statement." *List v. Driehaus*, 779 F.3d 628, 632-33 (6th Cir. 2015) (quoting *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 978 N.E.2d 832, 852 (2012)).

Reo claims defamation *per se*. (Doc. 1 at ¶¶ 24-25.) To prove defamation *per se*, the allegedly defamatory statement must fit within one of four categories:

> (1) the words import a charge of an indictable offense involving moral turpitude or infamous punishment; (2) the words impute some offensive or contagious disease calculated to deprive a person of society; (3) the words tend to injure a person in his trade or occupation; and (4) the words tend to subject a person to public hatred, ridicule, or contempt.

*Kendel v. Loc. 17-A United Food & Com. Workers*, 835 F. Supp. 2d 421, 433 (N.D. Ohio 2011) (citing Ohio law). Reo claims Lindstedt had actual knowledge his statements regarding Reo's employment at PNPP were false (Doc. 1 at ¶ 23), made without privilege (*id.* at ¶ 21), and published on the internet (*id.* at ¶ 20). Reo also alleges Lindstedt accused him of criminal conduct (*id.* at ¶¶ 12-14, 25), has suffered reputational damage as a result (*id.* at ¶ 24), and brought him "into ridicule, hatred, or contempt" (*id.*). Accepting all well-pleaded allegations as true, Lindstedt is liable for defamation *per se*.

### 2.  Count Two: Common Law Invasion of Privacy (False Light)

The Supreme Court of Ohio has identified two elements to establish an invasion of privacy (false light) claim: "(1) the false light in which the plaintiff was placed would be highly offensive to a reasonable person and (2) the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Dailey v. Accubuilt, Inc.*, 944 F. Supp. 2d 571, 585 (N.D. Ohio 2013) (citing *Welling v. Weinfeld*, 113 Ohio St.3d 464, 866 N.E.2d 1051, 1059 (2007)). To publicize a matter means "that the matter is made public, by communicating it to the public at large, or to so many persons

that the matter must be regarded as substantially certain to become one of public knowledge." *Welling*, 866 N.E.2d at 1057.

Reo claims Lindstedt "knew or acted with recklessness as to the truth of the statements" he made about his employment at the PNPP. (Doc. 1 ¶ 31.)  Reo further argues the statements made by Lindstedt are "highly offensive to a reasonable person." (*Id.* at ¶ 30.)  Regarding the publicization of Lindstedt's statement, Reo asserts "[t]he content Martin Lindstedt posted has been viewed and accessed no less than 28,466 times as of 5/3/2025."  (Doc. 41 at 325, 331.) Taking all well-pleaded allegations as true, Lindstedt is liable for invasion of privacy (false light).

### 3.    Count Three: Intentional Infliction of Emotional Distress

Intentional infliction of emotional distress has four elements:

> (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and (4) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable man could be expected to endure it.

*Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 619 (6th Cir. 2014) (quoting *Pyle v. Pyle*, 11 Ohio App.3d 31, 463 N.E.2d 98, 103 (8th Dist. 1983)).

Reo argues Lindstedt, by publishing a single online post discussing Reo's employment at the PNPP, "engaged in extreme and outrageous conduct" which resulted in Reo suffering "severe emotional distress in the form of vexation, irritation, anxiety, frustration, and hatred." (Doc. 1 at ¶¶ 35-37.)  Accepting all well-pleaded allegations as true, he fails to allege facts that satisfy the second and fourth elements required for his intentional infliction of emotional distress claim.

Extreme and outrageous conduct.  "[T]o say that Ohio courts narrowly define 'extreme and outrageous' conduct would be something of an understatement."  *Baab v. AMR Servs. Corp.*, 811 F. Supp. 1246, 1269 (N.D. Ohio 1993).  Only conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" is considered extreme and outrageous.  *Long v. Ford Motor Co.*, 193 F. App'x. 497, 503 (6th Cir. 2006) (quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (1983) (*overruled on other grounds*)); *Flagg v. Staples the Off. Superstore E., Inc.*, 138 F. Supp. 3d 908, 920 (N.D. Ohio 2015) (collecting cases outlining standard for extreme and outrageous conduct).

Lindstedt's posting of a single online audio file does not constitute extreme and outrageous conduct, even though the statements were defamatory.  *See Wellington v. Lake Hosp. Sys., Inc*, No. 1:19-CV-0938, 2020 WL 890572, 2020 U.S. Dist. LEXIS 30727, at *50 (N.D. Ohio Feb. 24, 2020) ("extreme and outrageous" conduct not found where summary judgment denied for defamation *per se* claim).  "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been so characterized 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort."  *Flagg*, 138 F. Supp. 3d at 920 (internal citation and quotation omitted).  "Only the most extreme wrongs, which do gross violence to the norms of a civilized society, will rise to the level of outrageous conduct."  *Brown v. Denny*, 72 Ohio App.3d 417, 594 N.E.2d 1008, 1012 (2d Dist. 1991).  Lindstedt's single post does not meet this standard.

Injury.  Injury must be both "severe and debilitating."  *Paugh v. Hanks*, 6 Ohio St.3d 72, 451 N.E.2d 759, 765 (1983).  "'Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.'"  *180 Indus., LLC v. Brunner Firm Co. LPA*, No. 20-4129, 2021 WL 4955268, 2021 U.S. App. LEXIS 20723, at *5-6 (6th Cir. July 13, 2021) (quoting *Paugh*, 451 N.E.2d at 765).  Examples of emotional distress allegations sufficient to sustain an intentional infliction of emotional distress claim "include traumatically induced neurosis, psychosis, chronic depression, or phobia."  *Paugh*, 451 N.E.2d at 765.

Reo alleges emotional distress only "in the form of vexation, irritation, anxiety, frustration, and hatred."  (Doc. 1 at ¶ 37.)  Reo has not shown "sustained debilitating injuries, or that [his] mental distress was so severe no reasonable person could endure it."  *Jones v. White*, No. 18109, 1997 WL 669737, 1997 Ohio App. LEXIS 4636, at *25 (9th Dist. Dec. 2, 1997), *as corrected* (Dec. 2, 1997); *Howkins v. Walsh Jesuit High Sch.*, No. 26438, 2013 WL 989376, 2013 Ohio App. LEXIS 817, at *31 (Ohio Ct. App. Mar. 13, 2013) (holding that allegations of "severe emotional distress, including being continually and constantly angry, upset, distraught, fearful, and anxious," did not support an intentional infliction of emotional distress claim).  Reo also provides no proof Lindstedt's single statement has affected his employment or other activities.  Reo was not fired from PNPP because of these statements, and Reo appears to continue practicing law.  *See Santino v. Columbus Public Schs.*, 833 F. Supp. 2d 780, 801-02 (S.D. Ohio 2011) (granting summary judgment on an intentional infliction of emotional distress claim where there was "no evidence that [the] stress was severe or debilitating, or that it interfered with [plaintiff's] employment or other activities").

**D.      Damages**

"[D]efault judgments do not establish damages."  *New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*, 44 F.4th 393, 403 (6th Cir. 2022).  "Where damages are unliquidated, a default admits only defendant's liability and the amount of damages must be proved."  *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (internal quotation marks omitted).  A district court "must conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  *Vesligaj v. Peterson*, 331 F. App'x. 351, 355 (6th Cir. 2009) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

A court may conduct a hearing or enter default judgment on damages without a hearing.  *See* FED. R. CIV. P. 55(b)(2).  "The plaintiff bears the burden of proving damages."  *Grantham & Mann, Inc. v. Am. Safety Prods., Inc.*, 831 F.2d 596, 601 (6th Cir. 1987).  "Once the existence of damages has been shown, all that an award of damages requires is substantial evidence in the record to permit a factfinder to draw reasonable inferences and make a fair and reasonable assessment of the amount of damages."  *Id.* at 602.  However, it is not "the district court's duty to determine damages" when it is given "no credible point from which to start."  *Flynn v. People's Choice Home Loans, Inc.*, 440 F. App'x 452, 456-57 (6th Cir. 2011).

Reo requests $250,000 in general damages and $250,000 in punitive damages for his defamation, invasion of privacy (false light), and intentional infliction of emotional distress claims.  (Doc. 41 at 326.)  In support, he attaches the judgment entry in the Lake County Cases, which awarded Reo $40,000 in compensatory damages, $50,000 in punitive damages for defamation *per se*, and $15,000 for invasion of privacy (false light).[4]  (*Id.* at 342.)

---

[4] This request differs from Reo's Complaint.  There, Reo requested $500,000 for "general, compensatory, and special damages" and an additional $250,000 in "non-economic damages." (Doc. 1 at 8-9.)

In calculating Reo's damages, *Flynn* is instructive.  440 F. App'x at 456.  In *Flynn*, the trial court entered default judgment against multiple defendants and referred the matter to a magistrate judge to determine damages.  *Id.* at 454.  Much like this case, the magistrate judge ordered Flynn, who proceeded *pro se*, to submit documentation of damages, to include "affidavits and other sworn statements."  *Id.*  Flynn ultimately filed a "two-page memorandum requesting $42 million in damages."  *Id.*  The magistrate judge subsequently issued a report recommending Flynn be awarded no damages because "Flynn had failed to document any damages."  *Id.*  Flynn objected, attaching a substantial number of expenses and additional documentation as evidence.  The district court entered an order awarding no damages.  *Id.*

On appeal, Flynn argued he had proved damages as alleged in his complaint and in his objection to the magistrate judge's report and "that the district court ignored clear evidence of damages set forth in the record."  *Id.* at 454-55.  The Sixth Circuit disagreed, finding Flynn "provided no documentation whatsoever to support his claim."  *Id.* at 455.  In his objection to the magistrate judge's report, Flynn attached voluminous receipts and invoices, but they were not "a starting point from which the district court might have been able to determine if he was entitled to any damages."  *Id.* at 456.  Determining that the burden to prove damages rested solely on Flynn, the Sixth Circuit affirmed the trial court's award because Flynn "had given it no credible point from which to start, despite having multiple opportunities to do so."  *Id.* at 456-57.

Like in *Flynn*, Reo has not given this Court a proper starting point.  Reo provides insufficient evidence Lindstedt's defamatory statement justifies any damages.  In his Brief, Reo block quotes his Complaint which discusses how he was previously awarded $105,000 for defamation and invasion of privacy (false light) in the Lake County Cases.  (Doc. 41 at 321.)  While Reo now claims that "[a]mong the statements found to be defamatory or false light were

statements that Defendant made about Plaintiff's employment with the Perry Nuclear Power Plant," this is not accurate. As discussed above, Reo tried to amend his pleadings to include the PNPP allegations presented here, but his efforts failed. There is no evidence the jury considered Lindstedt's defamatory statements about Reo's tenure at PNPP. Because Reo bases his damages claim on PNPP statements, and because the record there does not support that any PNPP allegations were ever presented to the jury in the Lake County Cases, Reo's reliance on the jury's verdict in the Lake County Cases is misplaced. Simply stated, because the now-alleged PNPP statements were not addressed in prior proceedings, Reo has not identified a requisite starting point. *Flynn*, 440 F. App'x at 456.

Reo submitted a declaration in support of damages, but it focuses on the PNPP statements and the mischaracterization he was previously awarded $105,000 for PNPP-related statements. (Doc. 41-1 at ¶¶ 3-8, 12 ("Reo Decl.").) And while Reo seeks $7,800 in therapy related costs, he does not explain how or if these costs are specific to Lindstedt's PNPP statements. (*Id*. at ¶ 10.)

The other declarations Reo submitted are similarly deficient. They provide general observations of Reo's condition and complaints he made about Lindstedt's conduct, but they do not assist the Court in determining, as it must, damages specific to the PNPP statements at issue here. (*See* Doc. 41-2 at ¶ 5 (A.D. Reo's Decl.) ("Bryan frequently spoke about Martin Lindstedt and the defamatory statements Lindstedt made against him."); Doc. 41-3 at ¶ 6 (Durkee Decl.) ("[I]n 2020 and 2021 and into 2022, Bryan was dealing with significant defamation and harassment by an individual in Missouri, Martin Lindstedt."); Doc. 41-4 at ¶¶ 4-5, 8 (Kotkowski, Psy.D. Decl.) ("Mr. Reo frequently discussed the Missouri-based defamed, Martin Lindstedt, as a source of anxiety, particularly the defamation and threats Mr. Lindstedt was perpetrating against Mr. Reo" and her opinion is based on "Mr. Lindstedt's behavior and actions directed to

Mr. Reo"); and Doc. 41-5 at ¶ 5 (Bristow Decl.) ("At times, it seemed like Mr. Lindstedt would publish on a daily basis egregiously defamatory statements about Bryan.").)  Indeed, certain of these statements speak to threats – not alleged here – and nearly daily harassment – with this case alleging defamation specific to a September 28, 2020 online publication concerning Reo's time at PNPP.  This is not to say Reo has not suffered because of Lindstedt's actions, but he has not demonstrated damages specifically resulting from Lindstedt's PNPP statements.

And even if Lindstedt's PNPP statements were litigated in the Lake County Cases, as Reo urges this Court to find, they would have been just one of many statements considered, a point Reo seemingly concedes.  (*See* Doc. 1 at ¶ 7 ("Among the statements found to be defamatory or false light were statements Defendant made about Plaintiff's employment with the [PNPP]."))

Finally, while Reo argues a damage award can generally be supported by his long history with Lindstedt, this argument goes beyond what Reo has alleged.  A damages award must be tied to the allegations presented in the action before the court.  *Grantham & Mann, Inc.*, 831 F.2d at 601-02 (finding recovery is precluded "where the damage claimed is not the certain result of the wrong").  Here, that is the September 28, 2020 publication.  (Doc. 1 at ¶ 13.)

That said, Ohio law recognizes that damages for *per se* defamatory statements are presumed and "proof of the defamation itself establishes the existence of some damages." *Gilson v. Am. Inst. of Alternative Med.*, 2016-Ohio-1324, 62 N.E.3d 754, 770 (Ohio Ct. App. 2016) (citing *Gosden v. Louis*, 116 Ohio App.3d 195, 687 N.E.2d 481 (9th Dist. 1996)).  Thus, under Ohio law, Reo is entitled to some damages regardless of whether he has submitted any proof of such damages.  *Id.* ("If a statement is defamatory *per se*, a plaintiff may maintain an action for defamation and recover damages, without pleading or proving special damages.")

(citation and quotation omitted).  But where a plaintiff has only presented speculative evidence of damages, Ohio courts have issued only nominal awards.  *See Barilla v. Keaton*, No. 14-CA-10659, 2015 WL 1432149, 2015 Ohio App. LEXIS 1162, at *6 (Ohio Ct. App. Mar. 31, 2015) (affirming $100 "nominal" damages award in defamation *per se* case where trial court granted default judgment but determined plaintiff did not show any actual damages).

Consistent with other similarly situated plaintiffs and Ohio court opinions, the Court finds that Reo is entitled to nominal damages in the amount of $100.00.  *Shoemaker v. Cmty. Action Org. of Scioto County, Inc.*, 2007 WL 2070365, 2007 Ohio App. LEXIS 3386, at *13-14 (Ohio Ct. App. Jul. 16, 2007) (a plaintiff who establishes defamation *per se* is entitled to nominal damages at a minimum); *see also Dunn v. Zimmerman*, 69 Ohio St.3d 304, 631 N.E.2d 1040, 1041 (1994) (characterizing $100 in compensatory damages is nominal).

Reo also requests punitive damages.  (Doc. 41 at 326.)  In Ohio, "[p]unitive damages are available in a tort action when compensatory damages are recoverable and the defendant's actions or omissions demonstrate malice or aggravated or egregious fraud."  *Whetstone v. Binner*, 146 Ohio St.3d 395, 57 N.E.3d 1111, 1115 (2016) (citing Ohio R.C. § 2315.21(C)(1), (2)).  It is the plaintiff's burden to prove "entitlement to punitive damages by clear and convincing proof."  Ohio R.C. § 2315.21(D)(4).  Notable still is that Ohio law recognizes the policy behind awarding punitive damages rests largely on the need to punish the offender and deter others from similar conduct.  *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 773 N.E.2d 526, 534 (2002) (citing *Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1174, 1176 (1987)).

Actual malice requires sufficient evidence of (1) "that state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge," or (2) "a conscious disregard for the rights and safety of other persons that has a great probability of causing

substantial harm." *Sivit v. Vill. Green of Beachwood, L.P.*, 143 Ohio St.3d 168, 35 N.E.3d 508, 510 (2015) (quoting *Preston*, 512 N.E.2d at 1174); *see also* Ohio R.C. 2315.21(D)(4).

To be sure, Reo alleges Lindstedt has long made various libelous comments about him. This action specifically addresses Lindstedt's statements about Reo's purported conduct at PNPP.  (Doc. 1 at ¶¶ 7-9.)  Also alleged is that Lindstedt made these comments for his own amusement, and Lindstedt believed he had a protected right to do so.  (*Id*. at ¶ 10.)  Notably, Reo's defamation claim asserts Lindstedt "acted with at least negligence in making false and defamatory statements" about Reo.  (*Id*. at ¶ 22.)

The Complaint allegations do not establish the malice necessary to support Reo's request for punitive.  First, they do not demonstrate Lindstedt acted with "hatred, ill will, or in the spirit of revenge."  *Sivit*, 35 N.E.3d at 510.  As alleged, Lindstedt acted negligently, without regard for the truth, and to entertain himself by making false statements about Reo.  A "long history of libel[ous]" conduct, without more, would not suffice.  (See. Doc. 1 at ¶ 7.)  Second, the statements do not demonstrate a conscious disregard for the safety of others.  Even though they touch upon PNPP operations, Lindstedt's statements targeted Reo's conduct while employed there, nothing more.  While it is certainly questionable that someone could be entertained by false statements such as these, questionable behavior does not equate to demonstrated malice.

Even if Lindstedt's statements were sufficient to prove malice, Reo has not shown actual damages.  This, too, is a basis on which to deny Reo's request for punitive damages.  Finally, the jury awarded Reo punitive damages in Case No. 19-cv-2103.  (*See* Case No. 19-cv-2103, Doc. 229 at 2286.)  While different statements were at issue, the policy recognizing the need for punishment and deterrence for false statements was vindicated by the jury's award.

With punitive damages not being established by clear and convincing evidence, Reo's request for punitive damages is denied.

## III.    CONCLUSION

For the reasons stated herein, default judgment is ENTERED against Defendant Martin Lindstedt, and his counterclaims are DISMISSED with prejudice for failure to prosecute. Judgment is ENTERED in favor of Plaintiff Bryan Anthony Reo on his defamation and invasion of privacy (false light) claims, and he is awarded $100 in nominal damages on his defamation claim.

**IT IS SO ORDERED.**

Date:  April 23, 2026

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE